G.   McHenderson   *v.*   Anderson   County.

(*Knoxville.*   November   17,   1900.)

1. COUNTY COURT. *Chairman of, has no authority to employ counsel to bring or prosecute suits for county.*

The Chairman of a County Court has no authority, express or implied, to employ counsel, on behalf of the county, to bring an action against a defaulting collector—*e. g.,* a County Trustee, and his sureties—to recover of them county funds. His duty, in such case, is to take the advice of the District or County Attorney, and, if necessary, place the matter in his or their hands for suit. The authority to employ counsel, to be paid by the county, to bring or prosecute actions on behalf of the county, or to assist therein, rests in the County Court in quarterly session. The Chairman's authority is limited to employment of counsel to defend suits against the county. (*Post, pp. 597–600.*)

Code construed: § 660 (S.); ₴577 (M. & V.); ₴520 (T. & S.).

2. SAME. *Contract by, to employ counsel, not implied.*

No contract for the employment of counsel by a county to bring and prosecute an action for county funds against its defaulting Trustee and sureties, will be implied from the fact that the members of the County Court knew of the pendency of the action, and that the counsel claiming compensation were rendering valuable services therein, and that these services resulted in a substantial recovery, which was accepted by the county, especially when the counsel claiming such contract and compensation were the District Attorney, entitled by law to fixed fees or salary, and a County Attorney, entitled by contract to a fixed salary, and their business associates, who were performing mere official duty. (*Post, pp. 597, 598, 608, 609.*)

3. DISTRICT ATTORNEY. *Duty to prosecute actions against defaulting collectors of taxes.*

It is the duty of District Attorneys, without additional compensation out of the public treasury, even since the inauguration of the system of back tax attorneys and revenue agents, to

G. McHenderson v. Anderson County.

bring and prosecute all actions, whether in Circuit or Chancery Courts, or whether by motion or otherwise, against all delinquent collectors of taxes and their sureties, including County Trustees since 1875, when they were also made collectors of taxes. (*Post, pp. 600–607.*)

Code construed: §§ 67, 524, 526, 962, 963, 5768, 5771 (S.); §§ 54, 490, 492, 583, 797, 798, 4732, 4735 (M. & V.); §§ 6, 428, 430, 669, 670, 3961, 3964 (T. & S.).

4. SAME. *Fees of.*

Public officers, including District Attorneys, are forbidden to receive compensation for the performance of official duty, other than that fixed by law. Hence, a District Attorney cannot contract with a county for additional compensation for himself and those he may associate with himself, in the prosecution of an action that it is his duty to prosecute officially. It matters nothing that the services performed were arduous and valuable beyond the compensation allowed, and were performed with ability and fidelity. The law demands ability and fidelity of its officials in the performance of public duty. Public office must be accepted with its burdens, as well as its benefits. (*Post, pp. 608, 609.*)

Code construed: § 962 (S.); § 797 (M. & V.); § 669 (T. & S.).

Cases cited: Mooney v. State, 2 Yer., 578; State v. Bachman, 6 Lea, 649; Keys v. State, 7 Lea, 408; Baxter v. Comptroller, 14 Lea, 122; Johnson v. State, 94 Tenn., 499; Hope v. Hamilton County, 101 Tenn., 325; Holzclaw v. Hamilton County, 101 Tenn., 338; State v. Murphy, 101 Tenn., 515; State v. Spurgeon, 99 Tenn., 659.

---

FROM ANDERSON.

---

Appeal from Chancery Court of Anderson County. R. H. SANSOM, Special Ch.

J. A. FOWLER and C. J. SAWYER for McHenderson.

LUCKY, SANFORD & TYSON for County.

WILKES, J. This is a bill to recover attorneys' fees from Anderson County for services rendered in bringing a defaulting Trustee to settlement. It is filed by G. McHenderson, John B. Holloway and X. Z. Hicks, against the county of Anderson and Underwood, its Trustee, and seeks to recover the sum of $3,000. The claim is based upon a suit heretofore brought in the Chancery Court of Anderson County against W. W. Hayes, a defaulting Trustee for the county, and his sureties upon his several bonds, he having held several terms of office as such Trustee. The result of this chancery suit was a recovery against the Trustee and his sureties for the sum of $20,036.07, and upon this recovery a lien was declared in this Court for the reasonable fees of complainants. It appears that after the judgment was taken, some concessions upon the amount were made by the county authorities for reasons satisfactory to them, but the greater part of the recovery—to-wit, $16,000—was paid to the County Trustee, and was by this bill enjoined in his hands until complainants' demand should be satisfied.

The injunction was dissolved upon the agreement of the county to issue interest-bearing warrants for the amounts decreed to be due the complainants when judicially ascertained, if the county should be held liable. The county defends upon the grounds hereafter stated:

21 P—38

G. McHenderson v. Anderson County.

1. That Mr. Holloway was not employed by the county, and rendered no service in the suit, except such as he may have voluntarily rendered in aid of his partner, McHenderson.

2. That as to McHenderson, he was never employed as an individual to prosecute the suit by the county, but, being district attorney-general for the district in which Anderson County is situated, he performed such services as he did render as District Attorney-general, and in his official capacity.

3. That as to complainant X. Z. Hicks, he was not specially employed in the suit by the county, but that he was County Attorney for the county, upon a salary of $150 per annum, and such services as he rendered were in his official capacity, and not as an individual attorney, and that they were compensated for in his regular annual salary.

4. That as to the lien fixed and declared by this Court upon final hearing of the Hayes suit to cover the reasonable fees of attorneys, it was rendered at the instance of complainants on an *ex parte* motion, which was not specially directed by the Court or brought to its notice, and that the county had no notice of the same and is not bound thereby.

The county filed an answer setting up these defenses and by agreement the answer was treated

as a cross bill for the purpose of setting aside such lien if the Court should so direct.

The Chancellor rendered a judgment in which it was decreed that McHenderson was entitled to recover $2,178.49 in the interest of all the complainants, and that they should settle their respective rights and equities between themselves, and the bill as to complainant Hicks was dismissed without cost. The county appealed. The decree of the Court below proceeded upon the basis that the chairman of the County Court employed McHenderson to prosecute the suit, and that it was understood he was to employ his partner, Holloway, to assist him, as well as the complainants Hicks, and that the county accepted the services of these attorneys in the prosecution and conduct of the suits.

The Court of Chancery Appeals finds as facts that these attorneys did represent Anderson County throughout the entire litigation with Hayes and his sureties, and were the only attorneys who appeared on its behalf.

That Court further reports the amount of labor done and service performed by each of these attorneys, and that the suits involved great labor, many questions of law, many items of liability; that the case was conducted and prosecuted with great industry, zeal, skill and ability, and to a successful termination, and that the services were reasonably worth the amount allowed by the Chan-

cellor, but that it was a matter of doubt whether the county was liable therefor.

The Court reports that McHenderson, at the time he brought and prosecuted the suit, was District Attorney-general for the Second Judicial Circuit of the state, in which Anderson County is situated; that he said to Mr. Farmer, the Chairman of the County Court, who had been instructed by the County Court to advise with him in regard to the Hayes default, that unless it was desired to indict Hays he had nothing to do with the matter in his official capacity, and that he thought it was the duty of the Chairman to place the matter in the hands of Mr. Young, back tax collector for Anderson County, or in the hands of an attorney appointed by the Comptroller for that purpose; that under recent statutes, he was relieved from collecting taxes from delinquent Trustees; that the compensation of revenue agents was fifteen per cent. on the amount collected, and this would compensate the tax attorney for collecting the tax, and the county would be saved any expenses; that he advised if any suit was brought it be in the Chancery Court, so that a full and fair settlement could be made and the liability properly apportioned among the different bondsmen; that he had nothing to do with such suits as District Attorney-general, and if the chairman did not desire to put the matter in the hands of the

G. McHenderson *v.* Anderson County.

revenue agent, that it be placed in the hands of Mr. Hicks, the County Attorney.

The Court of Chancery Appeals reports that the Chairman approved, if he did not originally suggest, bringing the suit in the Chancery Court, as a result of the conference between the Chairman and Mr. McHenderson. That Court also reports that Mr. McHenderson was employed to bring the suit with the understanding that he would associate with him Mr. Holloway and Mr. Hicks; that Mr. McHenderson understood that he and Mr. Hicks were employed as individuals, and not in any official capacity, and they would receive reasonable compensation for their services; that Mr. McHenderson was to be leading counsel, and that the allowance was to be made to him in his name on behalf of himself, his partner, and his associate, Mr. Hicks. That Court further reports that the several members of the County Court knew of the pendency of the suit, and that the complainants were representing the county in the litigation, and were allowed to do so without protest, and the county received the benefit of their services.

That Court, however, does not report that the members of the County Court knew that complainants had been employed as individuals, and were representing the county in their individual, and not official, capacities as attorneys.

That Court reports that unless there is some

law to prevent complainants from rendering the service as individuals, and to require them to act officially, then the complainants are entitled to receive reasonable compensation.

The Court of Chancery Appeals was of opinion that complainants were entitled to recover, and affirmed the decree of the Chancellor. That Court holds that it is not material that complainants were employed by the Chairman and not the Court, since the members of the County Court knew that the attorneys were rendering the service and did not object.

Further, that the provisions of the statutes to which reference will be hereafter made which define the duties and fix the compensation of the District Attorney for services in regard to revenue collectors, apply only to cases where the defaulting collector is proceeded against by motion in the Circuit Court, and have no application to cases where it is necessary, convenient, or advisable to bring the suit in the Chancery Court, and that it was not one of the official duties of the District Attorney-general to bring or prosecute such suit, especially when the suit involved complicated accounts extending from term to term through a series of years.

We think, under the finding of the Court of Chancery Appeals, it must be held that if the complainants were employed at all in their individual capacity, it was by the Chairman of

the County Court, and not by the Court as a body. While it is found that the members of the County Court knew that complainants were representing the county in the litigation, it is not found that they knew that it was under an employment as individuals by the Chairman, or in any other way than in an official capacity and character. We are of the opinion that the Chairman of the County Court had no authority to employ complainants to represent the county in this litigation as individuals or to agree to pay anything therefor by the county.

Section 660, subsec. 1, Shannons' compilation, provides that the Chairman of the County Court shall have power to employ counsel to defend suits against the county, who shall be entitled to a reasonable fee, to be allowed by the Court trying the case.

This is the extent of the power conferred by statute upon the Chairman of the County Court in regard to employment of counsel, except as hereinafter stated. The authority to employ counsel to prosecute suits for the county generally rests in the County Court in quarterly session, when it exists at all.

The argument is made that the Chairman of the County Court is the accounting officer for the county, and hence must have implied authority to employ counsel to bring defaulters to settlement, but this reasoning we think is not well founded. The theory and

provision of the law is that while the Chairman is the auditor of the accounts of collectors, he is authorized to call upon the District Attorney for advice, and when there is a dispute, to place the matter in the hands of the District Attorney for adjustment.

But, in addition, we are of the opinion that it was the official duty of the District Attorney to prosecute the suit, and receive for such service the compensation provided by statute. This was the duty of the District Attorney under the code of 1858.

The following provisions are contained in the code of 1858 and in the compilation of statutes by Shannon, Code, § 5768: It shall be the duty of each District Attorney: "12. To prosecute all motions against delinquent collectors of public taxes when made, or ordered to be made, by the Comptroller or County Trustee, without charge therefor."

"Sec. 670. For any neglect or refusal to settle his accounts the Comptroller and Judge or Chairman of the County Court shall proceed against the collector and his sureties by motion, which shall not be abated, quashed, or delayed by any want of form or informality in prosecuting the same."

"56. The word 'collector' includes any person intrusted with the collection of public revenue." (Shannon, § 67.)

"428. If the Trustee, on going out of office, fails to pay over the balance of revenue in his

hands, he and his sureties shall be liable to judgment, on motion of the District Attorney before the Circuit Court." (Shannon, § 524.)

"430. If he fail to pay money to those entitled to the same, or neglect to call those to account who ought to pay money into the treasury, whereby the county suffers loss, in either case he and his sureties shall be liable for the sums not collected or paid, on motion before the Circuit Court." (Shannon, § 526.)

"669. The District Attorney shall have a fee of ten dollars for prosecuting to judgment any delinquent collector of public money and his sureties, or either, to be taxed in the bill of costs and paid by the defendants, and no other fee or commission shall in any case be allowed the District Attorneys for their services in the collection of the public revenues." (Shannon, § 962.)

"3964. The compensation of the Attorney-general consists exclusively in the fees of office."

At the time of the adoption of the code, and down to the passage of the Act of 1875, Chapter 91, the Trustee himself collected no taxes, and was merely the depository of all the county revenue collected by the tax collectors, clerks, and justices and turned over to him by them, he being charged only with the safe-keeping and accounting therefor.

(*a*) Under the code of 1858, therefore, taking all the foregoing provisions together, in case any

person intrusted with the collection of public revenue
became delinquent and failed to settle his accounts,
if the delinquency was as to State revenue, it was
the duty of the District Attorney to proceed
against him by motion in the Circuit Court when
directed by the Comptroller (§§ 670, 3961), and
if the delinquency was as to county revenue, to
so proceed when directed by the Trustee (§ 3961)
or the County Chairman (§ 670), his fees being
fixed at $10, to be taxed up in the costs
(§ 669), · and if the County Trustee defaulted as
to revenue in his hands, he and his sureties were
likewise liable on motion by the District Attorney
in the Circuit Court (§§ 428, 430.)

(*b*) By the Acts of 1875, the office of tax
collector was abolished, and it was provided that
the Trustee should thereafter, in addition to his
other duties, collect all taxes levied on property
and polls. Acts of 1875, Chapter 91, secs. 1, 2,
and 23, pp. 129 and 135; *Anderson County* v.
*Hayes,* 15 Pickle, 542 at 555.

In other words, the County Trustee himself now
also became, under the Act of 1875, a "collector"
or "person intrusted with the collection of public
revenue," and in the event of his defalcation and
failure to settle his accounts as to revenue so
collected, it became the duty of the District At-
torney to proceed against him by motion in the
Circuit Court at the instance of the Comptroller
in case of defalcation of State revenue, and at

the instance of the County Chairman in case of defalcation in the county revenue.

By the Act of 1875 it follows, by necessary implication, that as the Trustee was substituted as to collection of property and poll taxes for the collector, the County Chairman as to all matters of accounting for such taxes, being the officer des-- ignated under the 'code to settle with the Trustee and other collectors of revenue (Code, §§ 517, 660, subsecs. 5, 6), was substituted for the Trustee, and was required to perform all duties in reference to the Trustee that were formerly required of the Trustee toward the tax collector—that is, in case of his defalcation in his collection, to order the District Attorney to enter motion against him and his sureties in the Circuit Court.

The duties of the District Attorney were in nowise changed or lessened. Before the Acts of 1875 it was his duty to prosecute the delinquent tax collector at the instance of either the county trustee or county chairman; after the Acts of 1875, it was his duty to prosecute the delinquent Trustee for delinquency' in collection at the instance of the County Chairman. The statute was not intended to change the former law in any other way than by substituting the Trustee for the tax collector as the collecting officer, and the County Chairman for the Trustee as the accounting officer.

(c) It being by law the duty of the District Attorney to prosecute the Hayes suit for the fee

of $10 fixed by the Code, which should have been taxed up in the costs, the complainants are not entitled to recover for any services they may have rendered.

"The compensation of the Attorney-general consists exclusively of the fees of office." (Code, § 3964; Shannon, § 5771.)

"No officer is entitled to 'demand or receive fees or other compensation for any services further than is expressly provided by law." (Code, § 5417; Shannon, § 6350.)

Thus the District Attorney is not entitled to a fee where the defendant is arrested on a peace warrant and bound to keep the peace, and is discharged without trial, there being no law authorizing such fee (*Mooney* v. *State,* 2 Yer., 578), nor to costs as upon a verdict of conviction, where he properly agrees to a verdict of not guilty against the defendant (*State* v. *Bachman,* 6 Lea, 649); nor to a fee for "final conviction" where after conviction the judgment is reversed and a *nolle prosequi* entered. *Keys* v. *State,* 7 Lea, 408.

In *Mooney* v. *State,* cited above, the Court said: "We have often held that such fees are not given by implication."

Nor is the clerk of the Supreme Court entitled to the six per cent. authorized by statute to the clerks of the Circuit Courts on money received by them from delinquent collectors, reported to the

Comptroller and paid into the State treasury. *Baxter* v. *Comptroller,* 14· Lea, 122.

So, the salaried recorder and policeman of a city, invested by law with the jurisdiction and power of Justices and constables, respectively, are not entitled to receive, in addition to their salaries, the fees fixed by law for Justices and constables for like services. *Johnson* v. *State,* 94 Tenn., 499.

The county is not legally liable to a member of the County Court for such services performed as chairman of a special committee as are paid for by the ordinary compensation allowed the Justice of the Peace, even where the services performed were onerous and faithfully performed, and upon the reliance of special remuneration. *Hope* v. *Hamilton County,* 17 Pickle, 325; *Holtzclaw* v. *Hamilton County,* 17 Pickle, 338.

So a back tax attorney cannot retain his fees for sales of land under Chapter 120, Acts of 1895, bid in for the State, out of the State and county revenues in his hands, collected out of other delinquents, but must await collection of his reasonable fee out of proceeds of land when sold by the State.

In that case it was said: "It is the settled policy of this State, fixed by statute, and enforced by the decisions of this Court, that no public · officer shall receive fees or other compensation for any service further than is expressly

provided by law." *State* v. *Murphy,* 101 Tenn., 515.

It follows, therefore, that it being by law the duty of the complainant, McHenderson, to prosecute the Hayes suit, he is not entitled to a decree in this cause for the services thus rendered.

It also follows that the other complainants are not entitled to a decree, either directly or through the complainant, McHenderson, as, all other questions aside, they are not entitled to recover for services rendered the county which another person, to-wit: the District Attorney, was under legal obligation to perform.

This principle was settled in the recent case of *State* v. *Spurgeon,* in which it was held that the Comptroller, having no power to employ counsel to assist the attorney-general in his duty of prosecuting the State's civil litigation in the Supreme Court, the attorneys so employed were not entitled to a lien for fees for such services upon the State's recovery. *State* v. *Spurgeon,* 15 Pick., 659.

We are of opinion that it does not matter that the suit was brought in the Chancery Court by bill rather than in the Circuit Court by motion. The motion is a summary remedy given by statute in order to more promptly realize the revenue that may be withheld. But it is not the only remedy, and if from the nature and complication of the litigation it may be best or most convenient that the suit be prosecuted in chancery, it

does not absolve the District Attorney from his official duty to bring the defaulter to settlement.

The statute which fixes the fee of the District Attorney does not limit it to service rendered in any particular Court nor to any special proceeding, but applies broadly to any action prosecuting to judgment any delinquent collector of public money and his sureties, and expressly provides that no other fee or commission shall in any case be allowed District Attorneys for their services in the collection of public revenue. Shannon, § 962.

It is true that the Legislature has from time to time, and especially since the passage of the Acts of 1895, provided a system of collecting back taxes through special agents and attorneys, to be appointed by the Comptroller, but it has never repealed the Acts making it the duty of District Attorneys to bring defaulting officers to settlement, and that duty still devolves upon them whether performed or neglected. Nor can the fact that District Attorneys have for years failed to comply with the requirements of the law annul the law itself nor relieve them from their duties thereunder. It being the official duty of the District Attorney to bring the delinquent Trustee to settlement, he could only act officially in the matter, and could not be employed as an individual for a stipulated compensation to do that which the law imposed upon him as an official and for which it fixed the amount of fees.

Speaking specially as to the claim of Mr. Hicks, the Court of Chancery Appeals find that, previous to rendering services in this Hayes case, he had been employed by the County of Anderson at a fixed salary of $150 per annum, and this amount was due and paid to him during the continuance of the Hayes litigation. It does not appear that his duties were marked out or limited by any contract or agreement, but that he was employed generally as County Attorney. This being so, it was his official duty to represent the county in its litigation with Hayes and his sureties in connection with the District Attorney-general, and to render such services in an official capacity and under his employment as County Attorney, and the same rule must apply to him as to Gen. McHenderson—that he cannot be employed as an individual to do that which was demanded of him in an official capacity.

It cannot alter the rule of law as to either of these officials that the value of their service was far beyond the compensation provided by statute. This state of affairs frequently occurs with all officials, that in the discharge of their official duties they may be called upon to perform labor for which the law does not provide adequate compensation, but this does not entitle them to additional compensation, either upon an implied promise or upon an express agreement, which they are not qualified or authorized to make. Public office

is taken and held with the emoluments and burdens which the law imposes, and the burdens are or may be far beyond the compensation allowed in many cases. But this gives no valid claim for additional compensation. *Hope* v. *Hamilton County,* 17 Pickle, 325; *Holtzclaw* v. *Hamilton County,* 17 Pickle, 338.

We are unable to see any valid legal ground upon which a recovery can be had in this case for either of these attorneys, notwithstanding the able, zealous, and efficient service rendered by them respectively and collectively. Mr. Holloway can be entitled only through his partner, McHenderson, and his claim must fail with that of McHenderson.

It follows that the decree of the Court of Chancery Appeals must be reversed and the bill of complainants dismissed at their cost. The County of Anderson is entitled to the relief sought under its cross bill, and all costs incident to that must also be paid by complainants.